EVAN P. THALGOTT, ESQ
Nevada Bar No. 15658
**THALGOTT LAW, PLLC**
9205 West Russell Road, Suite 240
Las Vegas, Nevada 89148
Telephone: (725) 274-4624
Email: thalgott@thalgottlaw.com
*Attorney for Creditor Valerie DiMaggio*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

ROBERT TOWNSEND GUNN, JULIE FARMER GUNN,

Debtors.

VALERIE DIMAGGIO

Plaintiff,

v.

ROBERT TOWNSEND GUNN, JULIE FARMER GUNN,

Defendants.

Case No.: BK-S-24-11950-NMC

Chapter 7

Adv. No.

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT UNDER 11 U.S.C § 523(a)(6) AND 11 U.S.C § 523(a)(4)**

Plaintiff Valerie DiMaggio (hereinafter "Mrs. DiMaggio" or "Plaintiff") alleges as follows:

## JURISDICTION

1. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C § 1334 and Bankruptcy Code §§ 523 and 727.

2. This is a core proceeding pursuant to 28 U.S.C. § 157.

## PARTIES

3. Plaintiff is the daughter and creditor of the Debtor Julie Farmer Gunn.

4. Defendant Julie Farmer Gunn is a Debtor in the above captioned case.

5. Defendant Robert Townsend Gunn is a Debtor in the above captioned case.

Page 1 of 9

## FACTUAL BACKGROUND

6.      Prior to commencing this adversary proceeding, Plaintiff has been pursuing litigation against Debtors in the Clark County District Court, Case No. A-21-831616-C. Debtors' filing of this Chapter 7 proceeding stayed Case No. A-21-831616-C.

7.      This matter is based on the facts and circumstances surrounding a conservatorship between Mrs. DiMaggio, as Conservatee, and Defendant Julie Gunn ("Defendant" or "Mrs. Gunn" or "Conservator"), as Conservator.

8.      In or around March 23, 2021, Plaintiff filed her complaint, seeking relief against Defendants Mrs. Gunn and Defendant Robert Gunn (collectively "Defendants") for the following causes of action: (1) Conversion; (2) Fraudulent Misrepresentation; (3) Intentional Infliction of Emotional Distress; and (4) Negligent Infliction of Emotional Distress.

## CONSERVATORSHIP

9.      In or around May 20, 2001, the Superior Court of the State of California for the County of Los Angeles, Northwest District, issued an Order Approving Petition of Guardian Ad Litem for Compromise of Disputed Claim of Minor ("Guardian Order"). Within this Guardian Order, the court approved a $1,000,000.00 Settlement Amount in favor of Mrs. DiMaggio as "compensation" for the rape and sexual assault Plaintiff endured while being treated at a hospital as a minor child. Further, the court approved the following specific procedures and processes regarding the payment of the Settlement Amount:

> The Court approves the purchase of two annuities by or on behalf of [defendants] for the benefit of [Mrs. DiMaggio], to be acquired through EPS Settlements Group Los Angeles, California. The annuities shall be made payable to [Mrs. Gunn], as Guardian/Conservator of the Estate of [Mrs. DiMaggio]. The total purchase price for the two annuities is $720,000, which will pay the following benefits:
>
> Stepped Lifetime Monthly Benefits:
> *Benefits from, AIG Life*
>     -$6,000 per month, guaranteed payable for 5 years, beginning one month from purchase date of May 6, 2001, then
>     -$2,365 per month, guaranteed payable for 5 years, compounding at 2% per year, beginning June 6, 2006, then
> *Benefits from Harford Life*
>     -$2,700 per month, payable for the life of [Mrs. DiMaggio] compounding at 2% interest per year, guaranteed 20 years, beginning June 6, 2011.

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

10.    Mrs. Gunn was initially provided Guardian Ad Litem status over Mrs. DiMaggio's Settlement solely due to Plaintiff's minor status. Particularly, Mrs. DiMaggio was born on September 21, 1983, and at the time the above Order was entered, Mrs. DiMaggio was 17 years, 7 months, and 19 days old.

11.    In anticipation of Mrs. DiMaggio's fast approaching 18th birthday, where she would no longer be considered a legal minor and therefore, be provided sole access to her finances and settlement proceeds, Mrs. Gunn petitioned the court for full Conservatorship status, both over Mrs. DiMaggio's person and estate. Mrs. Gunn supported this petition with false claims of extreme mental incapacity on the part of Mrs. DiMaggio. The court ultimately granted Mrs. Gunn's petition, however, given Mrs. DiMaggio's minor status at the time, Plaintiff did not have her own legal counsel representing her interests when Mrs. Gunn's petition was granted. In order to obtain full Conservatorship status, both over Mrs. DiMaggio's person and estate, the court ordered Mrs. Gunn to post a $135,000.00 surety bond. The funds for the $135,000 bond were wrongfully taken from Mrs. DiMaggio's Settlement, for which Mrs. Gunn unjustly acquired when the Guardianship/Conservatorship ended.

12.    Mrs. Gunn acted as Guardian/Conservator of Mrs. DiMaggio's estate from 2001, through 2007. During this time, Mrs. Gunn purchased real estate on behalf of Mrs. DiMaggio's Estate. Pursuant to the relevant law governing Conservatorships, Mrs. Gunn was required to inform and receive court permission for any purchase or sale of real estate on behalf of Mrs. DiMaggio's Estate which did not occur here. Instead, Mrs. Gunn used her Conservatorship status to unjustly enrich herself in the purchase of real estate. In or around 2004, Mrs. Gunn purchased real property commonly known as 50 Barns Street, Greenville, NC 27858 (Barns Property"), for approximately $60,000.00. At the time of purchase, both Mrs. Gunn and Mrs. DiMaggio were listed as co-owners of the property, which was intended to be used as an investment rental property for Mrs. DiMaggio's Estate. However, in or around 2005 Mrs. Gunn unjustly used her conservatorship status to remove Mrs. DiMaggio as co-owner of the Barns Property, by selling the Barns Property to herself at a discounted price of approximately $58,000, for which Mrs. Gunn then, rented out and kept all the proceeds of said rental. Mrs. Gunn ultimately sold the Barns

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

Property in or around 2011, keeping all the proceeds of the sale for herself. Further, during the course of the Conservatorship Mrs. Gunn listed herself as sole owner of the real estate purchased for Mrs. DiMaggio's estate when filing taxes, thereby unjustly taking advantage of all the tax benefits and proceeds of such ownership.

13.    Additionally, Mrs. Gunn informed the Court that Mrs. DiMaggio would be living at Mrs. Gunn's residence during the course of the Conservatorship. California law requires the Conservator to inform the court of any change in living condition of the Conservatee, including any change in address. In or around 2004, Mrs. Gunn kicked Mrs. DiMaggio out of Mrs. Gunn's residence, which resulted in Mrs. DiMaggio being homeless for a period of approximately six (6) months. During this six-month period, Mrs. Gunn failed to inform the Court of Mrs. DiMaggio's change in living condition. Further, during this six-month period, Mrs. DiMaggio did not receive any payments from her annuity Mrs. Gunn unjustly took all said annuity payments for her sole benefit, which totaled approximately $36,000.00.

14.    During the course of Conservatorship, Mrs. Gunn was required to conduct and file annual accountings with the court. Further, California law generally requires a Conservatee to have their own legal representation during the course of a conservatorship of both the person and estate. What's more, the court generally requires a Probate Investigator to perform regular check-up's with the Conservatee, to ensure both the health and safety of the individual, and to investigate any wrongdoings as a result of the Conservatorship. None of these court implemented safe-guards occurred here, due to Mrs. Gunn forging Mrs. DiMaggio signature on court documents waving Mrs. DiMaggio's rights. Further Mrs. Gunn did not conduct and file annual accountings with the court, and at no point did a Probate Investigator perform a wellness check-up on Mrs. DiMaggio.

## COURT ORDERED TERMINATION OF CONSERVATORSHIP

15.    In or around October 22, 2007, the court issued an Order Settling the First and Final Account and Report of Conservator of the Person and Estate, allowing Attorney's Fees, Terminating Conservatorship, and Authorizing Delivery of Assets to Conservatee ("Order Terminating Conservatorship"). The Order Terminating Conservatorship required Mrs. Gunn to immediately surrender and hand over the remaining assets of the Conservatorship to Mrs.

<div style="margin-left:auto">THALGOTT LAW, PLLC<br>9205 WEST RUSSELL ROAD, SUITE 240<br>LAS VEGAS, NEVADA 89148<br>Telephone: (725) 274-4624</div>

DiMaggio. This was the first and only accounting the estate provided to the court. Further, this "First and Final Accounting" was made and entered without any inspection by a person protecting Mrs. DiMaggio's own interests, and as there was no objections to the accounting, it was approved by the Court despite demonstrable improprieties. The "First and Final Accounting" of the estate assets listed a "balance of property on hand of $173, 339.67, of which $17,851.04 is cash, for which Mrs. Gunn was required to immediately hand over to Mrs. DiMaggio, for which Mrs. Gunn failed to do but instead kept for her own benefit.

16.    Further, the Court ordered that "on filing a receipt for the balance of the property on hand, [Mrs. Gunn], as conservator of the Estate of [Mrs. DiMaggio], shall be discharged, and the surety on her [$135,000.00] bond shall also be discharged." Mrs. Gunn was required to obtain Mrs. DiMaggio's signature for this receipt, thereby notifying Mrs. DiMaggio both the Conservatorship had ended, and that Mrs. DiMaggio was to receive all the assets of her estate and have full control of her life, decision making, and finances going forward. Mrs. Gunn admitted to forging Mrs. DiMaggio's signature on this receipt, and Mrs. DiMaggio was never made aware the conservatorship was terminated.

## DEFENDANT CONTINUED TO FRAUDULENTLY ACT AS CONSERVATOR AFTER TERMINATION OF CONSERVATORSHIP

17.    After the Court issued its Order Terminating Conservatorship, Mrs. Gunn was required to immediately inform Mrs. DiMaggio and all relevant third-parties that the Conservatorship had ended, including but not limited to: (1) the annuity companies issuing payments to the estate; (2) the banks and financial institutions in which Mrs. DiMaggio's held accounts; and (3) the state recorder's offices where Mrs. DiMaggio's estate owned real property. Further, Mrs. Gunn was required to remove herself from any and all accounts, real estate, and property for which Mrs. Gunn was named solely for purposes of her Conservator status.

18.    After the Order Terminating Conservatorship was entered Mrs. Gunn failed to inform both Mrs. DiMaggio and the relevant third-parties that the Conservatorship had ended, and failed to take her name off of any the assets of Mrs. DiMaggio's Estate. Further, Mrs. Gunn failed

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

to transfer any of the Estate's $173,339.67 balance to Mrs. DiMaggio, but instead, kept this property under her own control and for her own benefit.

19. After the court terminated the conservatorship, Mrs. Gunn continued misrepresenting herself as Conservator to both Mrs. DiMaggio and the relevant third-parties from 2007 through 2020. During this time, Mrs. Gunn wrongfully and fraudulently forced dominion and control over all of Mrs. DiMaggio's property, including but not limited to, Mrs. DiMaggio's bank accounts, her annuity accounts, and her real property. It was not until in or around 2019, did Mrs. DiMaggio begin to question Mrs. Gunn's Conservator actions and status. In or around December 2020, Mrs. DiMaggio sent Mrs. Gunn a Demand Letter, requesting an accounting of the Conservatorship, and restitution for recently discovered improprieties. Mrs. Gunn responded by, among other things, sending Mrs. DiMaggio a copy of the October 22, 2007 Order Terminating Conservatorship. This was the first time Mrs. DiMaggio was informed that the Conservatorship had ended in 2007. At this point, Mrs. Gunn began the process of spoliating evidence in order to hide her misconduct, by shutting down the joint bank accounts, transferring funds, and removing her name and ownership status from Mrs. DiMaggio's real and personal property.

20. In or around November 24, 2014, Mrs. Gunn used funds converted from Mrs. DiMaggio's to purchase the real property for which Debtors currently reside, commonly known as 905 Noche De Paz, Henderson, NV 89105.

21. From 2007, the date the Conservatorship was ordered ended, through 2020, the annuities paid out approximately $400,000, for which Mrs. Gunn converted for her own benefit. By falsely acting as Conservator, Mrs. Gunn wrongfully and fraudulently committed a distinct act of dominion and control over Mrs. DiMaggio's personal property, including, among other property, these annuity payments totaling approximately $400,000.

**FIRST CAUSE OF ACTION**

**To Deny Dischargeability of Debt Under U.S.C § 523(a)(6)**

22. Plaintiff repeats and realleges and incorporates by reference all of the allegations previously made in the foregoing paragraphs hereof, as though fully set forth at length herein.

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

23. Subparagraph 6 of 11 U.S.C § 523(a) provides in pertinent part that a discharge will be denied to a debtor for "willful and malicious injury by the debtor to another entity of to the property of another entity."

24. After the Order Terminating Conservatorship was entered, Mrs. Gunn failed to inform both Mrs. DiMaggio and the relevant third-parties that the Conservatorship had ended, and failed to take her name off of any the assets of Mrs. DiMaggio's Estate. Further, Mrs. Gunn failed to transfer any of the Estate's $173,339.67 balance to Mrs. DiMaggio, but instead, intentionally and maliciously kept this property under her own control and for her own benefit.

25. In or around October 22, 2007, upon the termination of the conservatorship, Mrs. Gunn as conservator, was required to obtain Mrs. DiMaggio's signature for a receipt of funds, thereby notifying Mrs. DiMaggio both the Conservatorship had ended, and that Mrs. DiMaggio was to receive all the assets of her estate and have full control of her life, decision making, and finances going forward. Mrs. Gunn admitted to forging Mrs. DiMaggio's signature on this receipt, and Mrs. DiMaggio was never made aware the conservatorship was terminated until 2020.

26. Further, at the termination of the conservatorship in 2007 Mrs. Gunn failed to transfer any of the Estate's $173,339.67 balance to Mrs. DiMaggio, but instead, kept this property under her own control and for her own benefit.

27. After the court terminated the conservatorship, from 2007 through 2020, Mrs. Gunn continued intentionally and maliciously misrepresenting herself as Conservator to both Mrs. DiMaggio and relevant third-parties. Further, during this time, the annuities paid out approximately $400,000, and by intentionally and maliciously falsely acting as Conservator, Mrs. Gunn fraudulently committed a distinct act of dominion and control over Mrs. DiMaggio's personal property, including, among other property, these annuity payments totaling approximately $400,000.

28. As a direct and proximate result of Debtor's willful and malicious actions and omissions intended to injure Plaintiff, Plaintiff has suffered damages.

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

29. Defendant's actions for which Plaintiff suffered injury were intentional and malicious. Therefore, the debt owed from Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C § 523(a)(6) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION

### To Deny Dischargeability of Debt Under 11 U.S.C § 523(a)(4)

30. Plaintiff repeats and realleges and incorporates by reference all of the allegations previously made in the foregoing paragraphs hereof, as though fully set forth at length herein.

31. Subparagraph 4 of 11 U.S.C § 523(a) provides in pertinent part that a discharge will be denied to a debtor for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

32. Defendant at all relevant times was or acted as a fiduciary of Plaintiff in the context of 11 U.S.C § 523(a)(4), with respect to Plaintiffs' real and personal property.

33. In or around October 22, 2007, upon the termination of the conservatorship, Mrs. Gunn was required to obtain Mrs. DiMaggio's signature for a receipt of funds, thereby notifying Mrs. DiMaggio both the Conservatorship had ended, and that Mrs. DiMaggio was to receive all the assets of her estate and have full control of her life, decision making, and finances going forward. Mrs. Gunn admitted to forging Mrs. DiMaggio's signature on this receipt, and Mrs. DiMaggio was never made aware the conservatorship was terminated until 2020.

34. Further, at the termination of the conservatorship in 2007, Mrs. Gunn failed to transfer any of the Estate's $173,339.67 balance to Mrs. DiMaggio, but instead, kept this property under her own control and for her own benefit.

35. After the court terminated the conservatorship, from 2007 through 2020, Mrs. Gunn continued misrepresenting herself as Conservator to both Mrs. DiMaggio and relevant third-parties. Those relevant third-parties included, but not limited to, (1) the annuity companies issuing payments to the estate; (2) the banks and financial institutions in which Mrs. DiMaggio's held accounts; and (3) the state recorder's offices where Mrs. DiMaggio's estate owned real property.

36. In regards to the annuity companies, after the conservatorship ended in 2007, Defendant failed to notify of the termination of the conservatorship, but instead, requested changes

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624

to the named beneficiary of the annuity payments, as well as inform the companies of change of addresses, in order to continue to receive and benefit from the annuity payments.

37. In or around November 24, 2014, Mrs. Gunn used funds converted from Mrs. DiMaggio to purchase the real property for which Debtors currently reside, commonly known as 905 Noche De Paz, Henderson, NV 89105.

38. From 2007, the date the Conservatorship was ordered ended, through 2020, the annuities paid out approximately $400,000. Further, during this time, Defendant would forge checks in Plaintiff's name for Defendants sole benefit, and by falsely acting as Conservator, Mrs. Gunn fraudulently committed a distinct act of dominion and control over Mrs. DiMaggio's personal property, including, among other property, these annuity payments totaling approximately $400,000.

39. As a direct and proximate result of Debtor's fraud and breach of her fiduciary duties, Plaintiff has suffered damages.

40. Defendant's omissions of material fact and fraudulent conduct took place while acting in a fiduciary capacity. Therefore, the debt owed from Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C § 523(a)(4) of the Bankruptcy Code.

### CLAIM FOR RELIEF

WHEREFORE Plaintiff prays for Judgment Against Defendants as follows:

1. That the debts owed by Defendant to Plaintiff be determined non-dischargeable pursuant to 11 U.S.C § 523(a)(4) and 11 U.S.C § 523(a)(6).

2. For such other and further relief as this Court deems just and proper.

DATED this 29th day of July, 2024.

THALGOTT LAW, PLLC

/s/ *Evan P. Thalgott*
EVAN P. THALGOTT, ESQ.
Nevada Bar No. 15658
**THALGOTT LAW**
9205 WEST RUSSELL ROAD, SUITE 240
Las Vegas, Nevada 89148
*Attorney for Plaintiff*

THALGOTT LAW, PLLC
9205 WEST RUSSELL ROAD, SUITE 240
LAS VEGAS, NEVADA 89148
Telephone: (725) 274-4624